UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PAUL JUST,

                                        Plaintiff,

                    -against-

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
18-CV-4595 (JMA)

**APPEARANCES:**

John Hewson
Fusco, Brandenstein & Rada, P.C.
180 Froehlich Farm Blvd
Woodbury, NY 11797
        *Attorney for Plaintiff*

Seth DuCharme
        *Acting United States Attorney*
Dara Olds
Arthur Swerdloff
        *Assistant United States Attorneys*
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
        *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Paul Just ("Plaintiff") seeks review of the final administrative decision by the

Commissioner of Social Security (the "Commissioner"), reached after a hearing before an

administrative law judge ("ALJ"), denying his application for disability insurance benefits under

Title II of the Social Security Act (the "Act").  Before the Court are the parties' cross-motions for

judgment on the pleadings.  (ECF Nos. 18, 25.)   Because the ALJ's decision was supported by

substantial evidence and applied the proper legal standards, the Commissioner's motion for

judgment on the pleadings is **GRANTED** and Plaintiff's cross-motion is **DENIED**.

## I.     BACKGROUND

### A.  Procedural History

Plaintiff was born in 1976.  He is a high school graduate with vocational training for motorcycle and jet ski repair.  Plaintiff worked in motorcycle repair and construction for nearly sixteen years until he was injured in September 2013 when he fell from a chair in a casino.  (Tr. 52, 104, 109, 277.[1])  Among his injuries were various cerebral trauma and affective disorders, including a concussion, vertigo, anxiety, depression, and recurring headaches.  (Tr. 100-11.)

On October 15, 2014, Plaintiff filed a Title II application for disability insurance benefits with the SSA.  (Tr. 99.)  He alleged that he became unable to work on September 25, 2013 because of the disabling conditions of headaches, depression, and anxiety.  (Tr. 255-56.)  After the SSA denied Plaintiff's application on February 11, 2015, he requested an administrative hearing.

On March 2, 2017, Plaintiff and Cherice Powell, a vocational expert ("VE"), testified before ALJ Patrick Kilgannon. (Tr. 47-64.)  The ALJ conducted a supplemental hearing on August 15, 2017, at which Justin Willer, M.D., an impartial medical expert ("ME") certified in neurology, psychiatry, and electro-diagnostic medicine, testified.  (Tr. 34-46.)

### B.  The Commissioner's Decision

In a decision dated August 23, 2017, the ALJ denied Plaintiff's claim and found that he was not disabled under the Act.  (Tr. 15-28.)  The ALJ applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits.  ALJ Kilgannon found that Plaintiff had met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments of: (i) headaches, (ii) depression, and (iii) anxiety.  (Tr. 17.)

---

[1]  Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner.  (ECF No. 19.)

The ALJ denied Plaintiff's application, however, and reasoned that he did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment and that he had the residual functional capacity ("RFC") to perform a full range of light work subject to certain exceptions. (Tr. 19.)  In particular, Plaintiff had "an ability to lift up to twenty pounds occasionally, lift or carry up to ten pounds frequently, sit six hours and stand or walk six hours in an eight hour workday, with normal breaks, and is unable to climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch and crawl." (Id.)  Further, the ALJ found that Plaintiff "should avoid exposure to hazards such as moving machinery and unprotected heights, and is limited to unskilled tasks, defined by the Dictionary of Occupational Titles as S.V.P. 1 or 2, in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting, with only occasional interaction with the public and coworkers." (Id.)

Accordingly, the ALJ found that Plaintiff's physical limitations precluded him from performing his past relevant work. (Tr. 26.)  However, the ALJ credited the VE's testimony that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the requirements of representative occupations such as an electronics worker or cafeteria attendant, and such jobs exist in significant number in the national economy. (Tr. 27.)  Therefore, the ALJ found Plaintiff not disabled from his alleged onset date of September 25, 2013 through June 30, 2016, the date his Title II disability insured status expired.

Plaintiff subsequently requested review by the Appeals Council.  When the Appeals Council denied his request on July 18, 2018, ALJ Kilgannon's decision became the final decision of the Commissioner. (Tr. 6–8.)  This appeal followed. (ECF No. 1.)

## II.   DISCUSSION

### A.  Social Security Disability Standard

Under the Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability.  See 20 C.F.R. § 404.1520.  The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)).  At step four, the Commissioner determines a claimant's RFC before deciding if the claimant can continue in his or her prior type of work.   20 C.F.R. § 404.1520(a)(4)(iv).  The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do."  Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**B.** <u>**Scope of Review**</u>

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record <u>de novo</u>, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998) (quoting <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." <u>State of New York ex rel. Bodnar v. Sec. of Health and Human Servs.</u>, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings supported by evidence having rational probative force." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. <u>See</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 82–83 (2d Cir. 1999); <u>see</u> <u>also</u> 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C. Analysis**

Plaintiff argues that this case should be remanded because the ALJ's decision was not supported by substantial evidence and failed to properly apply the law to the facts. In particular, he argues that the ALJ: (i) erred in evaluating the medical evidence in the record, (ii) failed to apply the VE's testimony regarding certain hypothetical situations, and (iii) failed to develop the record. He also claims that the Appeals Council failed to properly evaluate a May 2015 neuropsychological report submitted as supplemental evidence. Each of these arguments fails for the reasons explained below.

**1. The ALJ's Decision is Supported by Substantial Evidence in the Record**

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at \*15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at \*15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

6

Plaintiff lists several discrete ways in which the ALJ's decision purportedly lacked substantial evidence.  Specifically, Plaintiff argues the ALJ erred by: (a) failing to account for the frequency and severity of Plaintiff's headaches; (b) improperly weighing Dr. Firouztale's opinions regarding the amount of time Plaintiff would spend off task and the amount of time that he would miss from work entirely due to his symptoms; (c) ignoring the portions of Dr. Barnoski's report regarding Plaintiff's emotional functioning and depressed mood; (d) failing to inquire into Dr. Palma-Aquino's treatment notes; (e) not taking into account Dr. Acer's "provisional" findings; and (f) relying on Dr. Willer's testimony because Dr. Willer purportedly lacks psychiatric expertise.  (ECF No. 25 at 18-25.)  Each of these arguments fail for the reasons explained below.

### a.  Headaches

Plaintiff contests the ALJ's analysis regarding Plaintiff's subjective testimony as to the frequency and severity of his headaches.  In summarizing Plaintiff's entire hearing testimony regarding Plaintiff's personal background and the basis for his disability claim, the ALJ explained that Plaintiff at first "stated that [the headaches] occur daily, but he subsequently testified that they occur 15 or 20 time[s] a month."  (Tr. 20.)  The ALJ failed to recognize the distinction Plaintiff made when he testified, however.  At first, Plaintiff spoke generally regarding how often he suffers from headaches (daily).  He then clarified that he suffers from more severe migraines 15 or 20 times per month.  According to Plaintiff, "the ALJ's error of fact" on this issue "leads to it poisoning his overall assessment on the claim."  (ECF No. 25 at 15.)

The Court disagrees.  First, it is unclear that the ALJ even relied on what he deemed to be Plaintiff's inconsistent hearing testimony regarding his headaches in the analysis of Plaintiff's disability.  Instead, the RFC analysis with respect to Plaintiff's headaches appears to have focused on the medical records, rather than Plaintiff's testimony.  As the ALJ explained, he evaluated

Plaintiff's headaches based on the treatment records, which he described as containing "great variation" in how often Plaintiff experienced headaches during the period in question.  (Tr. 20 at n.1.)  For example, Plaintiff told Dr. Edward Firuztale, a neurologist, on December 20, 2016 that he experiences headaches three or four times a week.  (Tr. 538.)  In contrast, he told Dr. Kanista Basnayake, the consultative examiner, on December 31, 2014 that he experiences daily headaches "almost 12 to 24 hours, all day."  (Tr. 466.)  The record likewise shows that Plaintiff's subjective complaints to his medical providers regarding his migraines varied in severity.  (Tr. 369, 540.)  Indeed, by 2016, the records show, Plaintiff reported to his neurologist, Dr. Robert Duarte, that his "headaches are drastically reduced in frequency and severity since BOTOX" and he had "[n]o new medical problems."  (Tr. 642.)  Any inconsistencies that influenced the ALJ's decision do not appear to have been based on a misinterpretation of Plaintiff's subjective testimony, but rather on the extensive medical records.  Furthermore, despite the inconsistencies he found, the ALJ recognized that Plaintiff's headaches were significant enough to affect Plaintiff's RFC, which included various limitations on his ability to perform light work.  (Tr. 27.)  Accordingly, the Court has no basis to find the ALJ's overall assessment, or even his analysis of Plaintiff's headaches, were "poisoned."

### b.  Dr. Firouztale's opinions

Between 2013 and 2016, Plaintiff saw Dr. Edward Firouztale, a neurologist, for treatment on several occasions.  After recounting, in exacting detail, Dr. Firouztale's treatment history of Plaintiff during many visits over the years, the ALJ accorded "significant (but not unlimited) weight to his opinions."  (Tr. 22.)  Plaintiff argues that while the ALJ accepted Dr. Firouztale's opinions restricting him from working at heights or with power machinery, operating a motor vehicle, and only allowing him to work in a low stress environment, the ALJ should not have

discounted Dr. Firouztale's opinions regarding the amount of time Plaintiff would spend off task

or the amount of time Plaintiff would miss from work entirely due to his symptoms.  (ECF No. 25

at 20.)  Plaintiff argues that the ALJ did not explain his decision to discount Dr. Firouztale's

opinion on these issues.  (Id.)  Plaintiff is wrong. The ALJ clearly explained that he discounted

these parts of Dr. Firoutzale's opinion because they were inconsistent.  He noted that Dr. Firoutzale

authored two reports on the same day that each described a different percentage of time Plaintiff

would be off task and a different amount of time Plaintiff would miss work per month.  (Tr. 22.)

In the first report, Dr. Firoutzale opined that Plaintiff would be "off task" at work twenty-five

percent or more of the time and would miss more than four days of work per month because of his

impairment.  (Tr. 532.)  In contrast, in the second report, Dr. Firoutzale opined that Plaintiff would

be "off task" at work five percent of the time and would miss about two days of work per month

because of his impairment.  (Tr. 536.)  Ultimately, the ALJ disregarded both opinions on these two

limitations.  The ALJ properly gave less weight to the portions of Dr. Firoutzale's opinion that

were contradictory and explained his reason for doing so.  See Micheli v. Astrue, 501 F. App'x

26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are

internally inconsistent.")  Therefore, the Court does not credit Plaintiff's challenge to the weight

given to the different components of Dr. Firoutzale's opinion.

### c.  Dr. Barnoski's Report

On December 11, 2013, Edward Barnoski, Ph.D., and Nicole Keenan, Psy.D., performed

a neuropsychological examination of Plaintiff.  (Tr. 323-33.)  They diagnosed him with mild

traumatic brain injury, anxiety disorder not otherwise specified ("NOS"), major depressive

disorder NOS, headache disorder, and personality disorder NOS. (Tr. 331.)  However, they found:

> Overall, test results indicate significant deficits in almost all areas of cognitive
> functioning   including   attention,   memory,   verbal,   visual-perceptual,   and

psychomotor abilities that are more significant than what would be expected given his clinical appearance.  Additionally, emotional deficits are present and severe and are certainly impacting his abilities on a daily basis.  Again, it is noted that many of his test performances were odd, highly unusual, and indicate the possibility of malingering or poor effort.

(Tr. 332.)  First, Plaintiff challenges the report's overall findings, arguing that "[t]hese are not findings indicative of someone who is malingering, and instead is reasonably consistent with the Plaintiff's diagnoses of severe anxiety and major depressive disorder."  (ECF No. 25 at 21.)  As a result, he claims, "this report should not have been read by the ALJ as indicative alone of the Plaintiff's poor effort or exaggeration of his symptoms but instead in conjunction to the other reports in the record regarding his mental state of health."  (Id.)  In addition, despite these purported shortcomings in the report, Plaintiff suggests that the ALJ failed to highlight the ways in which the report was "reasonably consistent with the Plaintiff's diagnoses of severe anxiety and major depressive disorder."  (Id. at 21.)

The ALJ's decision is abundantly clear that he considered the report in conjunction with other evidence, and Plaintiff identifies no reason to find otherwise.  Indeed, other evidence read in conjunction with the report ultimately supports the report's findings and shows that it was not an anomaly, as Plaintiff suggests the ALJ should have found.  Dr. Firouztale, for example, "advised [Plaintiff] that there are inconsistencies in his neuropsychological evaluation and encouraged him to provide straight answer to the question[] that is asked."  (Tr. 496.)  Similarly, the testimony of medical expert Dr. Justin Willer emphasized Plaintiff's "malingering and poor effort" and described Plaintiff's "bizarre responses."  (Tr. 38.)  This medical evidence is consistent with the findings of Dr. Barnoski's report and shows that the ALJ did not rely on the report alone in support of "Plaintiff's poor effort or exaggeration of his symptoms."  (ECF No. 25 at 21.)  Instead, other

evidence in the record supported these findings.  Accordingly, Plaintiff's arguments regarding this report fail.

### d.  Dr. Palma-Aquino's Treatment Notes

Beginning on December 12, 2013, Plaintiff received treatment from Dr. Bethzaida Palma-Aquino, a psychiatrist.  In analyzing the records of Plaintiff's treatments by Dr. Palma-Aquino, as well as by a social worker with whom she worked, Andrew Drost, the ALJ explained that "[i]n light of the lack of treatment records from these providers, and mindful that treatment records from other treating sources consistently show normal mental health status findings, the Administrative Law Judge gives only limited weight to their opinions." (Tr. 23.)

Plaintiff argues, however, that before assigning this weight to their opinions, the ALJ should have sought more of their treatment notes.  (ECF No. 25 at 21.)  In response, the Commissioner explains that these records had been requested.  (Tr. 103.)  Having not received them, the Commissioner suggests that there was no remedy available because it is against agency policy "to demand mental health providers supply psychotherapy notes."  (ECF No. 26 at 4.) Accordingly, the Court finds that the ALJ did not err in failing to take additional measures to obtain these treatment notes.

### e.  Dr. Acer's "Provisional" Findings

On December 31, 2014, Kathleen Acer, Ph.D. performed a consultative psychiatric examination on Plaintiff.  (Tr. 470-73.)  The ALJ gave "[g]reat weight" to Dr. Acer's opinion that Plaintiff "is able to follow and understand simple instruction and directions and perform simple tasks because this assertion is supported by clinical findings." (Tr. 24.)  However, he gave "[n]o weight" to Dr. Acer's "statement about other limitations," specifically that Plaintiff "'may have trouble' maintaining attention and concentration, maintaining a regular schedule, learning and

11

performing complex tasks independently, adequately relating with others and dealing with stress."
(Id.)  According to the ALJ, this latter opinion is "provisional (as reflected by her use of the phrase
'may have') and ambiguous (in that 'trouble' is undefined)."  (Id.)

Plaintiff claims that the ALJ "cherry picked the aspects of medical reports he preferred"
and argues that the ALJ should have given more weight to the so-called "provisional" parts of Dr.
Acer's opinion.  (ECF No. 25 at 24.)  The Court recognizes that an "ALJ is not permitted to cherry
pick from the treatment record only evidence that is inconsistent with the . . . source's opinion in
order to conclude that the opinion should be accorded less weight."  Quinto v. Berryhill, No. 17-
CV-24, 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017).  However, such a situation is not what
happened here.  Dr. Acer's "provisional" opinion was couched in limiting language regarding what
limitations Plaintiff "may have."  It was reasonable for the ALJ to accord less weight to the
qualified portions of Dr. Acer's opinion than to those portions that were offered with a higher
sense of certainty.  Indeed, Plaintiff has identified no authority that holds otherwise.  Additionally,
the evidence noted above concerning Plaintiff's "malingering and poor effort" provided support
for the ALJ's decision to discount the "provisional" portions of Dr. Acer's opinion.

### f. Reliance on Dr. Willer's Testimony

On March 14, 2017, Dr. Justin Willer, a non-examining medical expert testified at a
supplemental hearing regarding Plaintiff's impairments and limitations.  (Tr. 34-46.)  Plaintiff
contests the ALJ's reliance on Dr. Willer's testimony because he supposedly lacks expertise in
psychiatric illness and argues that the non-examining medical expert should have been a
psychiatric expert.  (ECF No. 25 at 24.)  As Dr. Willer testified, however, he is board certified in
neurology, psychiatry, and electro-diagnostic medicine.  (Tr. 37.)  As a neurologist, he certainly
was qualified to testify regarding Plaintiff's neurological condition, including headaches.  Plaintiff

12

identifies no portion of Dr. Willer's testimony outside of his specialty in neurology on which the ALJ improperly relied.  Accordingly, this argument fails.

### 2.  VE Testimony

Plaintiff next argues that the ALJ "arbitrarily focus[ed] on only the most adversarial aspects of the testimony of the vocational expert."  (ECF No. 25 at 24.)  Plaintiff claims that "the ALJ fail[ed] to address any amount of time off task or work missed by the Plaintiff as part of his RFC finding, or even acknowledge that the Plaintiff would have any of these limitations."  (Id. at 25.)  In particular, Plaintiff contends that the ALJ ignored the VE's testimony in response to a hypothetical that "if a person were to be off task for 25% or more of the work day or miss four days of work, no work would be available in the national economy."  (Id. at 26.)

As the Commissioner points out, however, the ALJ never found that Plaintiff was subject to these limitations.  An ALJ is permitted to "rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citations omitted).  Here, the ALJ properly did not rely on the VE's testimony with respect to the hypothetical Plaintiff highlighted because, among other reasons, this hypothetical did not "accurately reflect the limitations and capabilities of the claimant involved" as set out in the ALJ's RFC determination.  Therefore, Plaintiff's argument regarding the ALJ's failure to adopt the VE's testimony in response to a specific hypothetical lacks merit.

### 3.  The May 2015 Neuropsychological Report

Finally, Plaintiff raises two issues with respect to a May 2015 neuropsychological report written by Dr. Michael Parrella, who examined Plaintiff.  (Tr. 65-72.)  Though the report was not

included in the original record before the ALJ, Dr. Willer referenced it in his testimony, stating

that in one report he reviewed "there's a mention of a second neuropsych that's better but it's not

in the record from December 2013.  It indicates the possibility of malingering and poor effort."

(Tr. 38.)  Although the ALJ did not consider this report, it was submitted to the Appeals Council,

which ultimately found that "this evidence does not show a reasonable probability that it would

change the outcome of the [ALJ's] decision." (Tr. 2.)

According to Plaintiff, by not seeking this report, "the ALJ has failed in his obligation to

fully develop the record thus constituting an error of law material to the outcome of the claim, and

thus, requiring remand of the claim for further adjudication consistent with the record as a whole."

(ECF No. 25 at 23.)  In particular, Plaintiff points to two portions of the report he says are critical

for assessing Plaintiff's disability: that "Plaintiff provided sufficient effort for the evaluation" and

that Plaintiff was diagnosed with post-concussion syndrome.  (Id.)

An ALJ has an affirmative duty to develop the record where there are deficiencies and

"clear gaps in the administrative record." Rosa, 168 F.3d at 79; 20 C.F.R. § 416.912(d).  However,

"the flip-side of this same proposition" is that "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ

is under no obligation to seek additional information in advance of rejecting a benefits

claim." Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (quoting Rosa, 168 F.3d at 79 n.5).

The requirement to develop the record "only applies where the record is inadequate or incomplete

such that the ALJ cannot make a determination." Roth v. Comm'r of Soc. Sec. Admin., No. 16-

CV-5711, 2018 WL 10070256, at *2 (E.D.N.Y. Aug. 30, 2018).  Based on the robust record that

was before the ALJ, it is unclear how the absence of this report left the ALJ with an inadequate or

incomplete record.  In fact, Plaintiff concedes that the report "notes similar history and similar

14

reporting of symptoms as prior evaluations and reports regarding the Plaintiff's head trauma and ongoing mental health issues." (ECF No. 25 at 26.) The two purportedly critical issues—Plaintiff's effort in the evaluation and his diagnosis with post-concussion syndrome—could be found elsewhere in the medical records, including in the diagnoses of different doctors. As a result, the Appeals Council found that the evidence in the report "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 2.) Accordingly, Plaintiff has not demonstrated that the ALJ failed to develop the record by including the report. He also has not explained how the Appeals Council failed to properly consider it. These arguments thus fail.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for judgment on the pleadings and **DENIES** Plaintiff's cross-motion. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  November 30, 2020
          Central Islip, New York

                                           ___/s/ (JMA)_____
                                           JOAN M. AZRACK
                                           UNITED STATES DISTRICT JUDGE

15